,

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

UNITED STATES,

        Plaintiff,

     -v-                               No.  19 CR 354-LTS

ELIAS POLANCO,

        Defendant.

---------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

Defendant Elias Polanco ("Mr. Polanco") brings this motion to dismiss the indictment, or, in the alternative, to hold Wade and Franks hearings.[1]  (Docket Entry No. 18.)

The Court has thoroughly reviewed the submissions of the parties,[2] and, for the following reasons, denies Mr. Polanco's motion to dismiss the indictment and the request for a Franks hearing, but grants his request for a Wade hearing.[3]

---

[1] See U.S. v. Wade, 388 U.S. 218, 242 (1967) (authorizing district courts to hold an evidentiary hearing to determine whether pretrial identification procedures improperly tainted an eye-witness's identification); and Franks v. Delaware, 438 U.S. 154 (holding that the Fourth Amendment requires an evidentiary hearing upon Defendant's substantial showing that a warrant affidavit contained a material, deliberate falsehood or statement made with reckless disregard for the truth).

[2] The Court has considered docket entry numbers 18, 19, 20, 22, 25, 26, and 27, as well as arguments made at oral argument held on Jan. 23, 2020.  (Docket Entry No. 28.)

[3] The government consents to a Wade hearing.  (Docket Entry No. 22, at 9.)

BACKGROUND

The indictment in this case charges Mr. Polanco with conspiring in violation of 18 U.S.C. section 1513(f) to retaliate for testimony given by a witness in an official proceeding, and conspiring to intimidate and threaten an individual with the intent to prevent the communication of information to a law enforcement officer relating to the commission of a federal offense in violation of 18 U.S.C. section 1512(k).  (Docket Entry No. 1.)[4]  These charges arise from an attack upon a former member of the Trinitarios gang who had testified at a criminal trial about crimes committed by other Trinitarios gang members, one of whom is Mr. Polanco's co-defendant in this case, Christian Nieves ("Nieves").  (Docket Entry No. 22, at 1.)

On the evening of Feb. 5, 2019, the witness-victim ("WV") in this case was attacked while walking in the Bronx, New York.  (Docket Entry No. 22, at 2.)  He was approached by two men, whom he allegedly recognized as Nieves and Mr. Polanco.  (Id. at 4.) The men called him a rat and warned him to watch out.  (Id. at 2.)  Nieves then slashed WV across the neck.  (Id. at 4.) The incident was captured on surveillance video.  (Id. at 5.)  After the attack, the two men walked in the direction of the camera (id.), and the man alleged to be Mr. Polanco was recorded in some detail.  (Docket Entry No. 19, Ex. D.)  The man was wearing a gray hoodie, which was pulled down over his eyes, revealing the lower half of what appears to be a closely or clean-shaven face.  (Id.)

To show that Mr. Polanco did not match that description on that date, the defense proffers four photographs from Mr. Polanco's cell phone which show him wearing a full beard and having dark skin and a round facial shape.  (Docket Entry No. 25, Exs. A, B, C, and D.)  The

---

[4]     The facts cited herein are drawn from the indictment, the factual and documentary proffers of Mr. Polanco, and the submissions of the government.

photographs are time stamped with dates of Jan. 11, 2019; Jan. 14, 2019; Feb. 2, 2019; and Feb. 20, 2019.  (Id.)[5]

Mr. Polanco also proffers an "Agent Affidavit in Support of Application for Search and Seizure Warrant" which was used to secure a search warrant for Mr. Polanco's phone.  (Docket Entry No. 19, Ex. C.)  In the affidavit, Agent Peter Cullen proffered that, based on his conversations with WV and his review of the surveillance video, the video corroborated WV's account of the events.  (Id. at ¶ 8.)  He further proffered that, during the incident, "[i]ndividuals who appear to be CHRISTIAN NIEVES… and ELIAS POLANCO… can be seen on video following [WV], although Polanco's face is party obscured by a gray hoodie and is harder to independently identify."  (Id.)


<u>DISCUSSION</u>

Mr. Polanco seeks an order dismissing the indictment.  An indictment is facially sufficient if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  <u>U.S. v. Alfonso</u>, 143 F.3d 772, 777 (2d Cir. 1998).

Mr. Polanco does not contend that the indictment is facially insufficient.  Instead, he argues that proceeding to trial upon the factual record before the Court would violate his right

---

[5]  Mr. Polanco also proffers photographs allegedly taken by his phone in the area of Bethlehem, Pennsylvania, more than 12 hours before the incident occurred.  (Docket Entry No. 25, Ex. E.)  To the extent that these photographs are probative, their import is a matter properly reserved for the jury.

to Due Process under the Fourteenth Amendment.[6]  Mr. Polanco contends that the government and the Court possess evidence which shows he has been misidentified.  Specifically, he proffers photographs which he asserts show that his build, facial coloring, and facial hair at the time in question did not match those of the person captured on the surveillance video.  (Docket Entry No. 26, at 2.)   Mr. Polanco argues that, because this evidence in his view so clearly contradicts the government's allegation that he is guilty of the crimes charged, proceeding to trial "corrupts the judicial process to such a degree that Mr. Polanco is denied due process of law" because it is fundamentally unfair to put a defendant through trial upon "a clear misidentification."  (Docket Entry No. 26, at 2.)

Mr. Polanco has not demonstrated that there is indisputable evidence that Mr. Polanco could not have been the person captured on the surveillance video.  His proffer includes four photographs, three of which predate the night in question and show Mr. Polanco with a full beard, and one photograph which post-dates the night in question by 15 days and shows Mr. Polanco with a beard that appears more trimmed.  These photographs and their time-stamps are not authenticated.  Additionally, they do not demonstrate that it would be unreasonable for a jury to find that Mr. Polanco, who appears to be capable of growing heavy facial hair, did not have a beard on the night in question, which was three days after the latest of the first three photographs was taken and more than two weeks before the final photograph was taken.  Accordingly, the Court is not persuaded that there has been a clear misidentification and denies the motion to dismiss for lack of a factual basis.[7]

---

[6]     At oral argument, defense counsel argued that proceeding to trial would violate his rights to both substantive and procedural due process.  (Docket Entry No. 28, at 8:9-10, 11:13-14.)

[7]     Mr. Polanco's argument that the build and coloring of the man in the video are clearly inconsistent with the proffered photographs of himself is similarly unavailing given the low picture quality of the video.

Additionally, the Court is not persuaded that it may properly decide the fact of identity upon a pretrial motion.  Federal Rule of Criminal Procedure 12(b) only permits pretrial motions to address disputes that can be determined "without a trial of the general issue."  The "general issue" certainly includes the factual question of whether the defendant was the perpetrator.  Mr. Polanco would have the Court apply the standard used in civil motions for summary judgment, specifically that which permits a Court to disregard alleged facts which are "blatantly contradicted by the record."  Scott v. Harris, 550 U.S. 372, 380 (2007).  Summary judgment is a procedural mechanism that is well established in civil cases and is authorized by the governing procedural rules for civil cases.  There is, however, no basis for it in the federal rules of criminal procedure.[8]  The Second Circuit has been clear that there is "no summary judgment in criminal cases."  U.S. v. Elie, No. 10-CR-0336 (LAK), 2012 WL 383403, at *1-2 (S.D.N.Y. Feb. 7, 2012) (denying defendants' motion to dismiss the indictment where the indictment adequately alleged the crimes charged because "[w]hether the government can prove [the charges] is a matter that must be reserved for trial" and because "such a determination would be inappropriate at this stage because the government has yet to present all of its evidence.")

Mr. Polanco argues that there is no reason to deny a criminal defendant the opportunity to seek dismissal of an indictment for lack of a genuine issue of material fact when civil cases are dismissed on those grounds, especially given the greater severity of criminal penalties.  (Docket Entry No. 20, at 5.)  While Mr. Polanco is correct that criminal cases present risks to defendants that are not present in civil cases, namely the risks of criminal penalties including the loss of liberty, this price is inherent in the constitutional structure of criminal prosecutions.  The constitution grants criminal defendants numerous protections that are not

---

[8]        Mr. Polanco admits that such an approach would be novel.  (Docket Entry No. 20, at 4-5.)

present in civil cases.[9]  It guarantees, among other things, the right to a trial by jury in felony

cases, a right which not only protects the defendant but also enshrines the public's interest in

evaluating the government's charges and evidence, as evidenced by the requirement that both

parties must consent to waive a jury trial.  Fed. R. Cr. P. 23(a).  Additionally, public access to the

trial operates as a constraint on the government's conduct and a regulator of the integrity of the

judicial process.  There is a public interest in the right of the press and members of the public to

perform this function.  In light of these structural features and norms of the criminal justice

process, it would be novel, and inappropriate, to preempt the jury's function on factual grounds

at the pretrial stage before the government has had an opportunity to present its case in chief.

Accordingly, Mr. Polanco cannot establish that the government's continued prosecution of this

case violates any substantive due process right.  Subjective "fairness" is not a constitutional

principle which can override the constitutional structure that is in place.

Nor has Mr. Polanco shown that there has been any procedural due process

violation to date.  Procedural due process demands notice and opportunity to be heard and, in a

criminal case, a speedy trial.  See Fuentes v. Shevin, 407 U.S. 67, 80 (1972); U.S. CONST.

AMEND. VI.  Here, progress toward a speedy trial is on pace and a Wade hearing can be held

prior to the trial to determine the reliability of the WV's identification.  Accordingly, the

protections required to ensure procedural due process remain intact and available.

---

[9]      Such protections include, but are not limited to, (1) the requirement that the government
prove its case beyond a reasonable doubt, see In re Winship, 397 U.S. 358, 361 (1970),
(2) the guarantee that the Defendant need not present any evidence, see U.S. Const.
Amend. V, (3) the protection that Defendant's failure to speak cannot be used against
him, see Doyle v. Ohio, 426 U.S. 610 (1976), and (4) the determination of material facts
by a jury of Defendant's peers in a felony case such as this.  See U.S. Const. Amend. VI;
Baldwin v. New York, 399 U.S. 66 (1970).

Franks Hearing

To obtain a <u>Franks</u> hearing, a defendant must make a "substantial preliminary showing" by a preponderance of the evidence that an affidavit in support of the search warrant contained a deliberate falsehood or a statement made with reckless disregard for the truth which was material to the probable cause determination.  See <u>U.S. v. Canfield</u>, 212 F.3d 713, 717-18 (2d Cir. 2000).  "The burden to obtain [a <u>Franks</u>] hearing is a heavy one, and such hearings are exceedingly rare."  <u>U.S. v. Melendez</u>, No. 16-CR-33 (LTS), 2016 WL 4098556, at *7 (S.D.N.Y. July 28, 2016).  To demonstrate that an affiant exhibited reckless disregard for the truth, a defendant must prove that the affiant in fact entertained serious doubts as to the truth of their allegations.  See <u>U.S. v. Rajaratnam</u>, 719 F.3d 139, 154 (2d Cir. 2013).

Mr. Polanco argues that Agent Cullen exhibited reckless disregard for the truth when he stated in his Affidavit of Probable Cause that the surveillance video "corroborated" the witness's version of events and showed an individual "who appear[s] to be… Elias Polanco… following Witness-1, although Polanco's face is partly obscured by a gray hoodie and is harder to independently identify."  (Ex. C, at ¶ 8.)  This statement cannot be fairly read to assert that Agent Cullen entertained no doubt that Polanco is the man in the video.  Rather, it explicitly disclaims sure knowledge of identity, qualifying the identification of the man as one "who appear[s] to be… Elias Polanco" because his face is "partly obscured."  (<u>Id.</u>)[10]

Accordingly, Mr. Polanco has not demonstrated by a preponderance of the evidence that Agent Cullen's statements were false or that he entertained serious doubts as to the

---

[10]     Mr. Polanco's argument that the obvious difference in facial hair between his appearance on that date and the man in the video justifies an inference that Agent Cullen was reckless with his identification is similarly unavailing because, as the Court explained above, he has failed to demonstrate a misidentification by his proffer.

veracity of the information he conveyed in the Affidavit referencing the man in the video as Mr. Polanco.  Accordingly, Mr. Polanco's motion for a <u>Franks</u> hearing is denied.[11]

C<small>ONCLUSION</small>

For the foregoing reasons, the motion to dismiss the indictment and for a <u>Franks</u> hearing is denied, but the motion for a <u>Wade</u> hearing is granted.

The <u>Wade</u> hearing will take place the week before trial, which is currently scheduled to begin Monday, May 4, 2020, but will be adjourned in light of the current public health emergency.  The next conference in this case will be held on May 1, 2020, at 11:00 a.m.

SO ORDERED.

Dated: New York, New York
       March 30, 2020

                                    /s/ Laura Taylor Swain
                                    LAURA TAYLOR SWAIN
                                    United States District Judge

---

[11] Because the Court denies the motion for a <u>Franks</u> hearing for failure to demonstrate the presence in the affidavit of a false statement or statement made with reckless disregard for the truth, the Court does not address whether such a statement was material to the Magistrate Judge's probable cause determination.